No. 24-50344

# In the United States Court of Appeals for the Fifth Circuit

**MICHAEL ALLEN**,

Plaintiff - Appellant,

v.

**FEDEX GROUND PACKAGE SYSTEM, INC.**,

Defendant - Appellee.

*On Appeal from the United States District Court
For the Western District of Texas, Austin Division
Civil Action No. 1:22-cv-1101*

**Brief of Appellee**

Joseph W. Gagnon
Fisher & Phillips
910 Louisiana Street, Suite 4000
Houston, TX 77002
Phone: (713) 292-5613

James P. Angelo
Federal Express Corporation
1000 FedEx Drive
Moon Township, PA 15108
Phone: (412) 859-2083

*Attorneys for Appellee Federal Express Corporation, successor by merger to FedEx Ground Package System, Inc.*

## CERTIFICATE OF INTERESTED PERSONS

1.    Pursuant to Fifth Circuit Rule 28.2.1, undersigned counsel of record certifies that the following listed persons and entities have an interest in the outcome of *Michael Allen v. FedEx Ground Package System, Inc.*, Case No. 24-50344.  These representations are made so that the judges of this Court may evaluate possible disqualification or recusal:

| | |
|---|---|
| Appellee-Defendant | Federal Express Corporation, successor by merger to FedEx Ground Package System, Inc. |
| Attorneys for Appellee | Joseph W. Gagnon<br>Fisher & Phillips<br>910 Louisiana Street, Suite 4000<br>Houston, TX 77002<br>Phone: (713) 292-5613<br><br>James P. Angelo<br>Federal Express Corporation<br>1000 FedEx Drive<br>Moon Township, PA 15108<br>Phone: (412) 859-2083 |
| Appellant-Plaintiff | Michael Allen |
| Attorney for Appellant | John F. Melton<br>The Melton Law Firm, PLLC<br>925 South Capital of Texas Highway<br>Suite B225<br>Austin, TX 78746<br>Phone: (512) 330-0017 |

*/s/ James P. Angelo*
James P. Angelo
Attorney for Appellee

i

## STATEMENT REGARDING ORAL ARGUMENT

The applicable law in this case is settled and there are no interesting or unique issues of fact that would benefit from further exploration through oral argument.  As a result, Appellee Federal Express Corporation, successor by merger to FedEx Ground Package System, Inc. ("FedEx"), believes that oral argument is unnecessary to aid the Court's decisional process.

However, should the Court determine that oral argument is appropriate, FedEx respectfully requests to appear and participate.

# TABLE OF CONTENTS

INTRODUCTION ................................................................. 1

JURISDICTIONAL STATEMENT ................................................ 2

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ........................... 3

STATEMENT OF THE CASE..................................................... 3

    I.    Mr. Allen was a Pickup and Delivery Manager at FedEx's South Austin Station. ........................................... 3

    II.    FedEx has a policy that strictly prohibits the possession of firearms on its premises............................ 4

    III.    Mr. Allen knew about the Weapons Policy. .................... 6

    IV.    Mr. Allen violated the Weapons Policy. .......................... 7

    V.    The District Court grants summary judgment in favor of FedEx.......................................................... 11

SUMMARY OF THE ARGUMENT ................................................ 12

STANDARD OF REVIEW ....................................................... 15

ARGUMENT................................................................... 17

    I.    The District Court properly applied the *McDonnell Douglas* burden-shifting framework to Mr. Allen's age discrimination claim....................................... 17

    II.    Mr. Allen has failed establish the fourth element of his prima facie case of discrimination................................ 22

        A.    Mr. Allen cannot show that he was replaced by someone younger...................................... 22

        B.    Mr. Allen failed to show other evidence of a discriminatory motive for his termination. ........ 26

**III.  The District Court's judgment should also be affirmed because Mr. Allen offered no evidence showing that FedEx's legitimate, non-discriminatory reason for terminating Mr. Allen was pretextual.**...........................................................33

CONCLUSION ...............................................................................37

# <u>TABLE OF CITATIONS</u>

## <u>Cases</u>

*Alkawaldeh v. Dow Chem. Co.*, 851 F.3d 422 (5th Cir. 2017) .......... 14, 30

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)............................ 16

*Angelina Emergency Med. Assocs. P.A. v. Health Care Serv. Corp.*, No. 18-425, 2024 U.S. Dist. LEXIS 4293 (N.D. Tex. Jan. 9, 2024) ............ 24

*Apache Corp. v. W&T Offshore, Inc.*, 626 F.3d 789 (5th Cir. 2010) ....... 16

*Atterberry v. City of Laurel*, 401 F. App'x 869 (5th Cir. 2010) ............... 20

*Baker v. Gregg Cnty.*, 33 S.W.3d 72 (Tex. App.—Texarkana 2000, pet. dism'd)................................................................................................ 25

*Brady v. Office of the Sergeant at Arms*, 520 F.3d 490 (D.C. Cir. 2008) ....................................................................................................... 20, 22

*City of Granbury v. Willsey*, No. 02-7-343, 2018 Tex. App. LEXIS 1928 (Tex. App.—Ft. Worth Mar. 15, 2018, no pet.) .................................... 26

*City of Houston v. Fletcher*, 166 S.W.3d 479 (Tex. App. – Eastland 2005, pet. denied) ......................................................................................... 17

*Cornett v. United Airlines Inc.*, No. 18-698, 2020 U.S. Dist. LEXIS 170386 (W.D. Tex. Sept. 17, 2020) ...................................................... 36

*Crosby v. Computer Sci. Corp.*, 470 F. App'x 307 (5th Cir. 2012) .......... 31

*Dulin v. Dover Elevator Co.*, No. 97-60116, 1998 U.S. App. LEXIS 40924 (5th Cir. Mar. 2, 1998)........................................................................ 25

*Durrani v. Guideone Nat'l Ins. Co.*, No. 23-20485, 2024 U.S. App. LEXIS 14987 (5th Cir. June 30, 2024) ...................................................... 16, 18

*Faruki v. Parsons S.I.P., Inc.*, 123 F.3d 315 (5th Cir. 1997) .................. 19

*Flores v. United Rd. Servs. Midwest, Inc.*, No. 19-1066, 2021 U.S. Dist. LEXIS 263527 (W.D. Tex. July 22, 2021) ............................................ 24

*Frank v. Xerox Corp.*, 347 F.3d 130 (5th Cir. 2003) ............................... 33

*Germany v. Austin Coca-Cola Bottling Co.*, No. 00-2675, 2002 U.S. Dist. LEXIS 6848 (N.D. Tex. Apr. 18, 2002) .................................................. 36

*Hague v. Univ. of Tex. Health Sci. Ctr.*, 560 F. App'x 328 (5th Cir. 2014) ................................................................................................ 20, 22

*Hinds v. Spring/United Mgmt. Co.*, 523 F.3d 1187 (10th Cir. 2008) .... 21

*Hudgens v. Univ. of Tex. Md Anderson Cancer Ctr.*, 615 S.W.3d 634 (Tex. App. – Houston [14th Dist.] 2020, no pet.)............................. 17, 18

*Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374 (5th Cir. 2010) 34

*Kaplan v. City of Sugar Land*, 525 S.W.3d 297 (Tex. App. – Houston [14th Dist.] 2017, no pet.) ...................................................... 19

*Martin v. Bayland Inc.*, 403 F. Supp. 2d 578 (S.D. Tex. 2005) ............. 26

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) ........................ 18

*NME Hospitals, Inc. v. Rennels*, 994 S.W.2d 142 (Tex. 1999)................ 18

*Okoye v. Univ. of Tex. Houston Sci. Ctr.*, 245 F.3d 507 (5th Cir. 2001) . 30

*Pepper v. Precision Valve Corp.*, 526 F. App'x 335 (4th Cir. 2013) ........ 21

*Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455 (5th Cir. 1998) ............. 16

*Ramsey v. Henderson*, 286 F.3d 264 (5th Cir. 2004) .............................. 29

*Rexses v. Goodyear Tire & Rubber Co.*, 401 F. App'x 866 (5th Cir. 2010) ................................................................................................ 13

*Rosario v. Texas Veterans Comm'n*, 607 F. Supp. 3d 711 (W.D. Tex. 2022)............................................................................................. 30

*Ross v. Judson Indep. Sch. Dist.*, 993 F.3d 315 (5th Cir. 2021) ............. 32

*S&W Enters., LLC v. Southtrust Bank of Alabama*, 315 F.3d 533 (5th Cir. 2003) .......................................................................................... 15

*Scott v. Harris*, 550 U.S. 372 (2007)....................................................... 28

*Septimus v. Univ. of Houston*, 399 F.3d 601 (5th Cir. 2005) .................. 18

*Smith v. Reg'l Transit Auth.*, 827 F.3d 412 (5th Cir. 2016) ................... 15

*Stallworth v. Singing River Health Sys.*, 469 F. App'x 369 (5th Cir. 2012) ........................................................................................... 20

*Trent v. Wade*, 776 F.3d 368 (5th Cir. 2015) ........................................... 15

*U.S. Postal Service Board of Governors v. Aikens*, 460 U.S. 711 (1983) 21

*Wal-Mart Stores, Inc. v. Canchola,* 121 S.W.3d 735 (Tex.1999) ............ 17

*Wheeler v. BL Dev. Corp.*, 415 F.3d 399 (5th Cir. 2005) ......................... 30

## Statutes

28 U.S.C. § 1291 ......................................................................................... 3

28 U.S.C. § 1332 ......................................................................................... 3

28 U.S.C. § 1441 ......................................................................................... 3

Tex. Lab. Code § 21.101 ........................................................................... 17

Tex. Lab. Code § 52.061 ........................................................................... 32

## Articles

Amanda Watts, *Police ID gunman who killed 8 people at an Indianapolis FedEx facility as 19-year-old former employee* (last updated, April 17, 2021), available at https://www.cnn.com/2021/04/16/us /indianapolis-shooting-fedex-facility/ ...................................................................................................... 6

## Rules

FED. R. CIV. P. 56 ...................................................................................... 23

FED. R. EVID. 602 ...................................................................................... 23

## INTRODUCTION

This appeal concerns FedEx's legitimate and non-discriminatory termination of Mr. Allen's employment at its facility in Austin, Texas.

Just one month after a mass shooting at a different FedEx facility, an employee showed a gun to Mr. Allen while on the premises of the South Austin Station where Mr. Allen worked. As set forth in its Firearms and Weapons Discovered on Property Policy (the "Weapons Policy"), FedEx strictly prohibits the possession of firearms and other weapons on its premises to ensure the safety and security of the workplace. Under the Weapons Policy, when a manager, like Mr. Allen, discovers that an employee has brought a weapon onto FedEx's premises, he is required to take certain steps, including promptly notifying Federal Express Security or station management of the situation and ensuring that the weapon is placed in a secure area. Instead of doing what he was supposed to do, Mr. Allen consciously disregarded his important obligations because, as he put it, he did not want the offending employee to get into trouble. After FedEx investigated Mr. Allen's inadequate response to this potentially dangerous situation and confirmed his

violation of the Weapons Policy, it terminated Mr. Allen's employment—an outcome mandated by the Weapons Policy.

Despite this uncontroversial set of undisputed facts, Mr. Allen sued FedEx for age discrimination under the Texas Commission on Human Rights Act ("TCHRA"). But as the District Court properly recognized, there are fatal factual and legal problems with Mr. Allen's claim. Namely, Mr. Allen cannot prove the fourth element of his prima facie case against FedEx—that is, he cannot show that he was replaced by someone younger or otherwise terminated because of his age. But even if he could, his claim would still fail because his clear violation of the Weapons Policy was a legitimate, non-discriminatory reason for his termination and the District Court correctly found that Mr. Allen fell far short of showing that this reason was pretextual.

For these reasons, which will be discussed in more detail below, this Court should affirm the District Court's well-reasoned decision to grant FedEx's motion for summary judgment and dismiss Mr. Allen's claim against FedEx, with prejudice.

## JURISDICTIONAL STATEMENT

The District Court had jurisdiction over the underlying matter

pursuant to 28 U.S.C. § 1332 because complete diversity existed between the parties and the amount in controversy exceeded $75,000, and FedEx timely removed this action pursuant to 28 U.S.C. § 1441.

This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291 because this appeal is from the District Court's final judgment dismissing Mr. Allen's claims with prejudice pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

Did the District Court correctly grant summary judgment in favor of FedEx on Mr. Allen's claim under the TCHRA because: (a) Mr. Allen failed to meet his burden of establishing a prima facie case of age discrimination and (b) Mr. Allen failed to raise a genuine issue of material fact that FedEx's stated reason for termination was pretextual?

## STATEMENT OF THE CASE

## I.    Mr. Allen was a Pickup and Delivery Manager at FedEx's South Austin Station.

Mr. Allen worked for FedEx from 1992 to 2000 and was rehired in 2016. ROA.137, 18:17-24, 20:12-17. In 2020, he transferred to the South Austin Station to work as a Pickup and Delivery Manager ("PDM"). ROA.138, 23:25-24:7. As a PDM, Mr. Allen worked with FedEx

3

contractors who performed pickup and delivery operations.  ROA. 139, 26:18-25.  Mr. Allen considered PDMs to be third in command at the station.  ROA.139, 29:14-15.

Steven Shelton was FedEx's Senior Manager at the South Austin Station.  ROA.171, 8:25-9:15.  He has been the Senior Manager at South Austin Station since November 2007.  ROA.171, 9:19-21.  He was the person who hired Mr. Allen as a PDM.  ROA.173, 15:24-16:1. While working as a PDM at the South Austin Station, Mr. Allen reported directly to Mr. Shelton.  ROA.139, 29:8-9

Mr. Allen was born on September 2, 1964.  ROA.135, 12:15-17.  Mr. Shelton was born on May 1, 1961, making him older than Mr. Allen. ROA.185, 64:13-14.

## II. FedEx has a policy that strictly prohibits the possession of firearms on its premises.

FedEx's Weapons Policy "strictly prohibits the possession of firearms and other weapons on its premises."  ROA.190.  Firearms or weapons include, "[a]ny firearms, whether loaded or unloaded, including handguns, rifles, shotguns, pellet or BB guns, or replicas."  ROA.194.

Pursuant to the Weapons Policy, managers are required to take the following steps if an employee is discovered with a weapon on the premises:

- Ask the individual to place the weapon into a divesting tray and remain in the screening area.

- Contact law enforcement if the employee does not have a permit.

- Write down the employee's name and FedEx ID number.

- Take a photo of the weapon.

- Secure the divesting tray and weapon in a secure location.

- Notify FedEx Security or FedEx station management if Security is not available.

ROA.191. With respect to notifying the proper personnel, although FedEx Security is not physically present at the South Austin Station, there is a cell phone number to reach FedEx Security that is readily accessible and posted on an emergency contact list. ROA.183, 57:9-17. As the Station Manager, Mr. Shelton is either physically present onsite or accessible by cell phone when he is not working. ROA.183, 56:25-57:5.

Any employee who potentially violates the Weapons Policy must immediately be placed on paid suspension. ROA.191-92. FedEx Security is required to investigate the potential violation and prepare a written

report.  ROA.192.  All violations of the Weapons Policy **must** "result in termination of employment."  ROA.192.

The Weapons Policy exists for good reason.  Unfortunately, on April 15, 2021, a mass shooting at a FedEx station in Indianapolis, Indiana claimed the lives of eight innocent people and left several others injured.  Amanda Watts, *Police ID gunman who killed 8 people at an Indianapolis FedEx facility as 19-year-old former employee* (last updated, April 17, 2021), available at https://www.cnn.com/2021/04/16/us /indianapolis-shooting-fedex-facility/.[1]  This incident underscores why FedEx  must have the Weapons Policy and why the company takes a zero-tolerance approach to violations.

## III.  Mr. Allen knew about the Weapons Policy.

Mr. Allen knew FedEx had a "pretty strict prohibition" against firearms and weapons on its property.  ROA.140, 32:11-18.  He also knew how to access a copy of the Weapons Policy if he needed to consult it.  ROA.141, 37:22-25.  As for the particulars of the Weapons Policy, Mr.

---

[1] The fact that there was a mass shooting at a FedEx station in Indianapolis, Indiana on April 15, 2021, is public knowledge.  It is generally known and can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.  Accordingly, though not essential to FedEx's Motion for Summary Judgement, the District Court was able to, and this Court can also, take judicial notice of this fact.  FED. R. EVID. 201.

Allen knew that any reported violation would have to be investigated and that a violation would result in the violator being terminated. ROA.142, 39:13-24.

## IV.   Mr. Allen violated the Weapons Policy.

On Sunday, May 16, 2021, just one month after the mass shooting in Indianapolis, an employee at FedEx's South Austin Station named Andy Munoz showed a gun to Mr. Allen on FedEx's premises. ROA.150, 73:10-16. According to Mr. Allen, Mr. Munoz walked into his office, reached into his backpack, and said, "Hey, I just picked up this gun." ROA.150-51, 73:24-74:1.

At the time, Mr. Allen and Mr. Munoz were the only people in the building. ROA.151, 74:14-20. Mr. Allen did not ask Mr. Munoz to place the gun into a divesting tray. ROA.151-52, 73:14-76:4. Mr. Allen did not escort Mr. Munoz out of the building to make sure the gun was no longer on the premises. ROA.151, 74:14-20. Instead, he just "assumed" Mr. Munoz took the gun out of the building. ROA.151, 74:14-20. Mr. Allen did not contact FedEx Security or Mr. Shelton on the day Mr. Munoz showed him his gun. ROA.151, 75:21-76:1.

Recall that the Weapons Policy requires that managers who become aware of weapons on the premises to ask the offending employee to place the weapon in a divesting tray and notify FedEx Security or, if Security is not available, station management. ROA.191. Mr. Allen admitted that he did not take these actions (ROA.150-51, 73:1-76:4), even though FedEx Security and the Station Manager were both readily available by phone (ROA.183, 56:25–57:17).

Mr. Allen eventually mentioned to another employee that Mr. Munoz showed him a gun that Mr. Munoz had brought into the building. ROA.151, 76:5-12. That employee, T.J. Hendrick, was an Area Manager, a role inferior to Mr. Allen's position as a PDM. ROA.180, 45:4-10. But he didn't even tell Mr. Hendrick on the day of the incident; instead, he only told him about it three days later. ROA.151, 76:5-12, ROA.200-01.

Notably, Mr. Allen never reported the incident to Mr. Shelton, the Station Manager. Instead, Mr. Shelton only learned of the incident from another PDM and that is when FedEx Security got involved. ROA.179-80, 41:25-43:6.

Consistent with FedEx policy, once alerted on May 20, 2021, FedEx Security immediately began an investigation. ROA.200-01. The security

specialist who investigated the incident was Jeff Claridge. ROA.178, 37:1-3. Mr. Claridge prepared a written report of his findings. ROA.200-01.

Mr. Claridge interviewed Mr. Munoz on May 20, 2021. Mr. Munoz admitted to bringing a firearm onto FedEx premises at least four days earlier and showing it to Mr. Allen. ROA.200-01. Mr. Munoz further admitted he waited an hour before returning the weapon to his vehicle. ROA.200-01. Mr. Munoz was placed on suspension and submitted his written resignation of employment that same day. ROA.200-01, ROA.204.

Mr. Claridge also interviewed Mr. Allen on May 20, 2021. Mr. Allen stated that Mr. Munoz showed him a firearm inside the station on May 16, 2021. ROA.200-01. According to Mr. Allen, Mr. Munoz told him it was a BB gun. ROA.201. But that fact, even if true, was immaterial because Mr. Allen knew that a BB gun was not allowed on premises under the Weapons Policy:

> **Q:** So you understood that even a BB gun or a fake gun was not allowed on the premises, right?
>
> **A:** Right.

ROA.142, 38:12-14.  Mr. Allen only assumed Mr. Munoz took the gun to his car and didn't even realize Mr. Munoz had, in fact, kept the gun in his possession inside the building for another hour.  ROA.151, 74:14-20.

Following this interview, Mr. Allen was immediately placed on administrative suspension for failing to report the gun incident with Mr. Munoz to FedEx Security or Mr. Shelton.  ROA.200-01, ROA.182, 52:11-53:4.

While on paid suspension, Mr. Allen sent a text message to Mr. Shelton in which he admitted that he knew he was supposed to report the incident but that he consciously disregarded his obligations under the Weapons Policy because he didn't want Mr. Munoz to be investigated. ROA.206.  Here is the text message admission, in full:

> "I thought I did what was right tell TJ and **I told him I did not want Andy to get fired** and I need to pass this on to you to report it in the chain of command of the perpetrator.  **I said nothing to anybody including you because I knew there would be an investigation**."

ROA.206 (emphasis added).  Mr. Allen admitted during his deposition that he sent this message (ROA.152, 80:18-21), and Mr. Shelton testified that he received it (ROA.185, 64:20-22).

As a result of FedEx Security's investigation, and a finding that Mr. Allen clearly violated the Weapons Policy, Mr. Shelton told Mr. Allen on June 1, 2021, that FedEx was terminating his employment.  ROA.184, 59:11-16.  The final decision to terminate was made by Mr. Shelton's supervisor, Mike Keeler, the Managing Director of District Operations. ROA.183-84, 57:20-58:3, ROA.208.  Mr. Keeler (56 years of age at the time) confirmed that he made the decision to terminate Mr. Allen's employment solely because Mr. Allen violated the Weapons Policy. ROA.208, ¶ 2.  Mr. Allen's age was in no way a consideration in the termination decision.  ROA.208, ¶ 3.

Mr. Allen contends through an unsupported declaration that after he was terminated, he believes that his job was "replaced" by redistributing his responsibilities to Alex Spivey and Crystal Elorduy. ROA.252, ¶ 3.

## V.     The District Court grants summary judgment in favor of FedEx.

After discovery, FedEx filed a summary-judgment motion, arguing that Mr. Allen failed to establish his prima facie case of age discrimination and that even if he did, he failed to show that FedEx's

reason for terminating his employment was pretextual. Following full briefing on the motion, the District Court held oral argument.

In the end, the District Court agreed with all of FedEx's arguments. The District Court held that Mr. Allen failed to meet his burden of establishing his prima facie case of discrimination. That's because Mr. Allen could not show he was "replaced" by someone younger than him or that he was treated any differently from other similarly situated younger employees. ROA.282-83. The District Court further found that "FedEx also put forth a legitimate, non-discriminatory reason for his termination: [Mr.] Allen violated the Weapons policy" and that Mr. Allen did not raise "a genuine dispute" that "he was terminated for any reason other than that violation." ROA.285-86.

## SUMMARY OF THE ARGUMENT

This Court should affirm the District Court's grant of summary judgment in favor of FedEx for two straightforward reasons.

*First*, Mr. Allen failed to establish a prima facie case of age discrimination. Under the familiar *McDonnell Douglas* burden-shifting framework, one of the essential elements of Mr. Allen's claim is that he must prove either that he was (1) replaced by someone younger or (2)

otherwise discharged because of his age.  Mr. Allen can do neither.  He cannot show that he was replaced by someone younger because, according to his own speculative testimony, following his termination, his job duties were simply redistributed to two of his peers.  The law is clear that an employee in these circumstances has not been "replaced." *Rexses v. Goodyear Tire & Rubber Co.*, 401 F. App'x 866, 868 (5th Cir. 2010).

Mr. Allen also cannot establish that he was otherwise discharged because of his age.  As other evidence of age-based discrimination, Mr. Allen first advances a cat's paw theory of discrimination.  He claims that the alleged discriminatory motive of Ms. Spivey and Ms. Elorduy should be imputed to Mr. Shelton, who Mr. Allen incredibly asserts was the final decisionmaker regarding his termination.  The problem with this argument is that it ignores reality.  The record is crystal clear: Mr. Shelton was ***not*** the decisionmaker, Mr. Keeler was.  That's what both men testified.  And Mr. Allen offered no evidence to rebut that testimony.

Mr. Allen's other argument for discrimination is that FedEx supposedly treated Mr. Shelton differently for his alleged violation of the Weapons Policy.  That argument fails because Mr. Shelton is not a viable comparator.  To start, he is actually ***older*** than Mr. Allen.  To prove

13

disparate treatment, Mr. Allen must present evidence that he was treated less favorably than someone outside of his protected class. *Alkawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 427 (5th Cir. 2017). But even if he was outside Mr. Allen's protected class, he'd still need to occupy nearly identical circumstances. The undisputed record, however, establishes that Mr. Shelton had different responsibilities, a different supervisor, different capabilities, and a different alleged work rule violation than Mr. Allen, which precludes any finding that the two men had nearly identical circumstances.

**Second**, even if Mr. Allen could prove his prima facie case, his claim would still fail because he did not show that FedEx's stated reason for terminating him was pretextual. Mr. Allen's violation of the Weapons Policy in the immediate wake of a mass-shooting tragedy at another of FedEx's facilities was a serious transgression of an important FedEx policy. To get around this violation, Mr. Allen primarily argues that the policy simply did not apply to him. This argument rests on a distorted reading of the Weapons Policy, which clearly applied to Mr. Allen and all other FedEx employees. Any other remaining claims of disparate treatment Mr. Allen raises rest on the same flawed arguments that he

14

makes to establish his prima facie case that the District Court explicitly rejected, and this Court should reject, too.  The District Court properly concluded that Mr. Allen failed to create a genuine issue of fact regarding whether FedEx's justified decision to terminate Mr. Allen's employment was pretextual.

## STANDARD OF REVIEW

The District Court's decision to grant summary judgment under Federal Rule of Civil Procedure 56 is a question of law subject to *de novo* review by this Court.  *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 417 (5th Cir. 2016) (citation omitted).  "Summary judgment must be affirmed if it is sustainable on any legal ground in the record, and it may be affirmed on grounds rejected or not stated by the district court."  *S&W Enters., LLC v. Southtrust Bank of Alabama, NA*, 315 F.3d 533, 537-38 (5th Cir. 2003) (cleaned up).

This Court has emphasized the importance of disposing of factually unsupported claims via summary judgment.  *Trent v. Wade*, 776 F.3d 368, 376 (5th Cir. 2015) (explaining that summary judgment "is required when the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

(cleaned up)).   Additionally, "where the non-moving party fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, no genuine issue of material fact can exist." *Apache Corp. v. W&T Offshore, Inc.*, 626 F.3d 789, 793 (5th Cir. 2010) (cleaned up).   Put simply, the relevant inquiry is whether the non-moving party can introduce "sufficient evidence … for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).   That means "[a] plaintiff's subjective beliefs, conclusory allegations, speculation, or unsubstantiated assertions are insufficient to survive summary judgment." *Durrani v. Guideone Nat'l Ins. Co.*, No. 23-20485, 2024 U.S. App. LEXIS 14987, at *7 (5th Cir. June 30, 2024) (citations omitted).   The onus is on the party "opposing summary judgment" to "identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

## ARGUMENT

**I.    The District Court properly applied the *McDonnell Douglas* burden-shifting framework to Mr. Allen's age discrimination claim.**

Mr. Allen's sole cause of action is for age discrimination under Chapter 91 of the TCHRA.  Under the TCHRA, "an employer commits an unlawful employment practice if, because of age, the employer fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment." *Hudgens v. Univ. of Tex. Md Anderson Cancer Ctr.*, 615 S.W.3d 634, 641 (Tex. App. – Houston [14th Dist.] 2020, no pet.) (citations omitted).  The discrimination prong only applies to "alleged discrimination against an individual forty years of age or older."   *Id.* (citing Tex. Lab. Code § 21.101).

The Texas legislature "intended to correlate state law with federal law in employment discrimination cases when it enacted the TCHRA." *City of Houston v. Fletcher*, 166 S.W.3d 479, 488-89 (Tex. App. – Eastland 2005, pet. denied) (citing *Wal-Mart Stores, Inc. v. Canchola,* 121 S.W.3d 735, 739 (Tex.1999)); *NME Hospitals, Inc. v. Rennels*, 994

S.W.2d 142, 144 (Tex. 1999)).  As a result, "when analyzing a claim under the TCHRA," courts should "look to state cases as well as to the analogous federal statutes and the cases interpreting those statutes." *Hudgens*, 615 S.W.3d at 641 (citations omitted).

Where, as here, the plaintiff's discrimination case is based on circumstantial evidence,[2] the court applies the familiar *McDonnell Douglas* burden-shifting framework.  *Durrani*, 2024 U.S. App. LEXIS 14987, at *11 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).  Meaning that, a terminated employee, like Mr. Allen, must first make a prima facie case of age discrimination.

A prima facie case of age discrimination requires proof that the Mr. Allen "1) is a member of a protected class; 2) was qualified for [his] position; 3) was subjected to an adverse employment action; and 4) was replaced by someone outside the protected class" (*i.e.,* someone younger), "or that other similarly situated persons were treated more favorably." *Septimus v. Univ. of Houston*, 399 F.3d 601, 609 (5th Cir. 2005) (citations omitted); *see also Faruki v. Parsons S.I.P., Inc.*, 123 F.3d 315, 318-19 (5th

---

[2] Mr. Allen concedes that he has no direct evidence of discrimination.  Appellant's Br. 4.

Cir. 1997). If Mr. Allen can meet this initial burden, then the burden shifts to FedEx to show that he was terminated for a legitimate, nondiscriminatory purpose. *Septimus*, 399 F.3d at 609. Once FedEx makes that showing, the burden then shifts back to Mr. Allen to show that "the stated reason was a pretext for discrimination or that even if the reason was true, discrimination was also a motivating factor for the adverse employment action." *Kaplan v. City of Sugar Land*, 525 S.W.3d 297, 303 (Tex. App. – Houston [14th Dist.] 2017, no pet.) (citation omitted).

In the case below, Mr. Allen "invite[d] the court to find that inquiry into his prima facie case is no longer relevant because FedEx has offered a nondiscriminatory reason for his termination." ROA.282. The District Court appropriately "decline[d] his invitation." ROA.282. Mr. Allen is once again extending this invitation to this Court for the same reasons he articulated to the District Court. Appellant's Br. 4-6. That is, he argues this Court should follow the D.C. Circuit's decision in *Brady v. Office of the Sergeant at Arms*, in which that court found that the question of whether an employee has established a prima facie case of discrimination is "no longer relevant" once an employer asserts a legitimate, non-discriminatory reason for the adverse employment

action. *Id.* at 5 (discussing 520 F.3d 490 (D.C. Cir. 2008)). The problem with Mr. Allen's argument is that, as he acknowledges, this Court has already considered and rejected it.

In fact, this Court has declined to adopt the holding in *Brady* on **three separate occasions.** *See, e.g.*, *Stallworth v. Singing River Health Sys.*, 469 F. App'x 369, 372 (5th Cir. 2012) ("Stallworth urges us to follow [*Brady*], and pretermit the issue whether she has made the requisite prima facie showing given that Singing River has offered legitimate, nondiscriminatory reasons for the challenged employment actions. She cites no precedent in this circuit for following *Brady*, and we decline to do so."); *Hague v. Univ. of Tex. Health Sci. Ctr.*, 560 F. App'x 328, 335 (5th Cir. 2014); *Atterberry v. City of Laurel*, 401 F. App'x 869, 871 n.1 (5th Cir. 2010).

This Court is not alone in declining to follow *Brady*. The Fourth and Tenth Circuits have likewise considered, and rejected, the suggestion from the D.C. Circuit to dispense with any analysis of the prima facie case once an employer has offered a legitimate, non-discriminatory reason for the adverse employment action at the summary-judgment stage. *See, e.g., Pepper v. Precision Valve Corp.*, 526 F. App'x 335, n.1

(4th Cir. 2013) ("We decline Pepper's invitation to adopt the holding of [*Brady*].");  *Hinds v. Spring/United Mgmt. Co.*, 523 F.3d 1187, 1202 n.12 (10th Cir. 2008) ("Although we readily concede that the prima facie case requirement may sometimes prove a sideshow to the main action of pretext, this court has indicated that it reserves the right to undertake each step of the Supreme Court's *McDonnell Douglas* framework in analyzing discrimination and retaliation claims on summary judgment, and has not infrequently dismissed such claims for failure to establish a prima facie case.").

Mr. Allen has not offered any compelling reason for the Court to reverse its prior course on *Brady*.  All he offers is the claim that this Court's prior opinions do not explicitly address *Brady* in the context of the Supreme Court's decision in *U.S. Postal Service Board of Governors v. Aikens*, 460 U.S. 711 (1983).  *Aikens*, however, was decided almost 30 years before this Court weighed in on the continuing necessity of the prima facie burden in cases with a developed factual record.  The suggestion that this Court somehow overlooked or ignored *Aikens* is preposterous on its face.  Indeed, this Court has said that *Aikens* is limited to cases "tried on the merits," and so does not apply to cases, like

21

this one, that are at the summary judgment phase. *Hague*, 560 F. App'x at 335.

Contrary to Mr. Allen's argument, the prima facie burden remains relevant at the summary-judgment stage of this case.[3]

## II. Mr. Allen has failed establish the fourth element of his prima facie case of discrimination.

Under the *McDonell-Douglas* framework, the District Court correctly found that Mr. Allen failed to establish the fourth element of his prima facie case—he cannot show that he was replaced by someone younger or that he was otherwise terminated because of his age. Because he cannot establish all the elements of his prima facie case, Mr. Allen's challenge to the District Court's judgment stumbles out of the starting gate and the Court need not go any further to affirm the District Court's decision.

### A. Mr. Allen cannot show that he was replaced by someone younger.

In his brief, Mr. Allen claims that "there is evidence that [he] was

---

[3] But even if it was no longer relevant, it wouldn't change the outcome of this appeal. That's because, at most, *Brady* suggests that courts should focus on the pretext stage of the analysis if the employer identified a nondiscriminatory reason for the employment action. *Brady*, 520 F.3d at 493-94. And, as will be discussed below in Section III of the Argument, *infra*, the District Court correctly held that Mr. Allen failed to show that FedEx's reason for his termination was pretextual. ROA.286.

replaced by someone younger than him." Appellant's Br., p. 7. But he doesn't cite any competent evidence to support that claim. All he points to is a conclusory statement from a declaration that he filed that essentially states that upon his termination, two of his co-workers, Ms. Spivey and Ms. Elorduy, took over his job responsibilities. *Id.* (citing ROA.252). There are two fatal problems with Mr. Allen's claim.

**First**, Mr. Allen lacks personal knowledge about what did or did not happen after his termination. A "declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the … declarant is competent to testify on the matters stated." FED. R. CIV. P. 56(c)(4). The Federal Rules of Evidence further state that a "witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." FED. R. EVID. 602. Nothing in Mr. Allen's declaration, or his deposition testimony, indicates how Mr. Allen could possibly know how FedEx conducted business in the South Austin Station where he worked after he was terminated. After that point, he was not onsite and would not have been able to observe how anyone's jobs were being performed.

He can therefore only offer speculation. *See, e.g.*, *Angelina Emergency Med. Assocs. P.A. v. Health Care Serv. Corp.*, No. 18-425, 2024 U.S. Dist. LEXIS 4293, \*26 (N.D. Tex. Jan. 9, 2024) ("Jordan lacks personal knowledge as to the routines at other medical facilities besides his own. And under the Federal Rules of Civil Procedure, the Court cannot consider portions of a declaration used to support or oppose a motion for summary judgment unless it is made on personal knowledge." (cleaned up)); *Flores v. United Rd. Servs. Midwest, Inc.*, No. 19-1066, 2021 U.S. Dist. LEXIS 263527, at \*19 (W.D. Tex. July 22, 2021) ("There is also no other evidence that Plaintiff observed how these accommodations would have operated in his workspace. In this sentence, Plaintiff attempts to assert a legal conclusion regarding his qualification for the job merely based on his own speculation."). The only witness who was deposed who would have knowledge about what happened after Mr. Allen was terminated, Mr. Shelton, did not speak to Mr. Allen's "replacement." Thus, there's no competent evidence regarding whether Mr. Allen was replaced by someone younger than him.

**Second**, as the District Court held, "even if the court accepted [Mr.] Allen's declaration as competent summary judgment evidence on this

point, [he] cited no law supporting his claim that when existing employees absorb a terminated employee's responsibilities, they 'replace' the terminated employee." ROA.283. And he still doesn't cite any law for that proposition. The reason he doesn't is because "[i]n the context of age discrimination," when "a terminated employee's job duties are distributed among other employees after termination, ***those employees do not replace the terminated employee***." *Baker v. Gregg Cnty.*, 33 S.W.3d 72, 81-82 (Tex. App.—Texarkana 2000, pet. dism'd) (internal footnote omitted) (emphasis added); *see also Dulin v. Dover Elevator Co.*, No. 97-60116, 1998 U.S. App. LEXIS 40924, at *7 (5th Cir. Mar. 2, 1998) ("[A]pplicable case law holds that when an employee's position has been eliminated and the job duties reassigned to existing employees, that employee has not been replaced." (cleaned up)).

But that is exactly what Mr. Allen is attempting to claim here (albeit through incompetent evidence)—that he was "replaced" by FedEx redistributing his job responsibilities to Ms. Spivey and Ms. Elorduy. As a matter of law, that does not prove replacement by younger employees. *See, e.g., Baker*, 33 S.W.3d at 81-82; *City of Granbury v. Willsey*, No. 02-7-343, 2018 Tex. App. LEXIS 1928, at *12 (Tex. App.—Ft. Worth Mar.

15, 2018, no pet.) (plaintiff failed to prove replacement by younger employee in age discrimination case where "the affidavit attached to the City's plea demonstrate[d] that [plaintiff's] job duties—which included performing inspections for public work projects, acting as a permit clerk, and performing pest control—were distributed among five individuals[.]"); *Martin v. Bayland Inc.*, 403 F. Supp. 2d 578, 583 (S.D. Tex. 2005) ("At the time Plaintiff was discharged, his job duties were distributed among other existing employees, a fact Plaintiff does not contest. … Plaintiff has not shown that Defendant replaced him with a younger employee." (cleaned up)).

There is nothing in the record that supports a finding that FedEx replaced Mr. Allen with someone younger.

## B.    Mr. Allen failed to show other evidence of a discriminatory motive for his termination.

Because Mr. Allen cannot show that he was replaced by a younger employee, he is left with trying to point to other evidence of age discrimination.  On this score, he has two theories.  He first claims that the discriminatory animus of his two co-workers, Ms. Spivey and Ms. Elorduy, should be imputed to Mr. Shelton to satisfy his prima facie burden under a "cat's paw" framework.  Appellant's Br., p. 15.  He then

26

claims that FedEx treated Mr. Shelton differently when Mr. Shelton supposedly violated the Weapons Policy by allegedly having a gun in his car. *Id.* at 12-13. But the District Court correctly rejected both theories in finding that he couldn't meet his prima facie burden. ROA.282-86.

### 1.    Mr. Allen's "cat's paw" theory rests on a faulty premise.

Mr. Allen's "cat's paw" theory is fatally flawed because it rests on the faulty premise that Mr. Shelton was the ultimate decision maker with respect to his termination, which is simply not true.

As Mr. Allen concedes, to assert a valid cat's paw theory, he must establish two conditions: (1) that a co-worker exhibited retaliatory animus and (2) that the same co-worker possessed leverage, or exerted influence, over the titular decisionmaker. Appellant's Br. 9 (citation omitted). He argues that remarks made by Ms. Spivey and Ms. Elorduy "expressed discriminatory animus towards [Mr. Allen] and had influence over the actual decision maker, Steve Shelton." *Id.* at 7. The problem with Mr. Allen's argument is that it operates in an alternate reality where Mr. Shelton, not Mr. Keeler, made the decision to terminate Mr. Allen's employment.

As the District Court found, the undisputed record is clear: Mr. Keeler made that decision. ROA.285-86. That's what Mr. Shelton said at his deposition (ROA.183, 57:18-25), and Mr. Keeler confirmed in his declaration (ROA.208, ¶ 2). Critically, Mr. Keeler also said that "[n]either Alex Spivey nor Crystal Elorduy had any role, involvement, or input in my decision to terminate Mr. Allen's employment." ROA.208, ¶ 4. He further stated that he decided to terminate Mr. Allen based solely on Mr. Allen's violation of the Weapons Policy. ROA.208, ¶ 2. There is no evidence in the record to dispute any of these facts.

When opposing parties have different versions of the story, but one is "blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). That's what we have here. The record demonstrates that Mr. Keeler made the decision to terminate Mr. Allen for violating the Weapons Policy, and that he did so without any input or influence from Ms. Spivey or Ms. Elorduy. And so, the District Court was right— Mr. Allen's cat's paw theory is based "solely on conjecture" and ignores

the testimony provided by the key witnesses and "the Weapons Policy itself." ROA.286.

As this Court has made clear, "speculation" and "unsubstantiated assertions are inadequate to satisfy the nonmovant's burden in a motion for summary judgment." *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2004) (cleaned up). The District Court's decision to reject Mr. Allen's cat's paw theory is consistent with the sound principles outlined by this Court and should be affirmed.

### 2.    Mr. Shelton is not a viable comparator.

Mr. Allen's last resort for establishing his prima facie case of discrimination is to argue that FedEx treated Mr. Shelton differently when Mr. Shelton supposedly violated the Weapons Policy by allegedly having a gun in his car. Appellant's Br., p. 12-13. This tack fails, too.

The District Court summarily rejected this argument because "[Mr.] Shelton is also over the age of 40, and therefore cannot be used to show FedEx discriminated against [Mr.] Allen because of his age." ROA.283. Mr. Allen "can only prove disparate treatment by presenting evidence that he was treated less favorably than others ***outside of his protected class.***" *Alkawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 427 (5th

Cir. 2017) (emphasis added).   At no point in the case below or in this appeal has Mr. Allen addressed this authority disqualifying Mr. Shelton from serving as a comparator.

That's not the only reason Mr. Shelton cannot serve as a valid comparator, though.   A comparator must be "similarly situated" to the plaintiff.   *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 406 (5th Cir. 2005) (citation omitted).   To be considered "similarly situated," "employees must occupy nearly identical circumstances." *Rosario v. Texas Veterans Comm'n*, 607 F. Supp. 3d 711, 719 (W.D. Tex. 2022) (cleaned up). "[E]mployees with different responsibilities, different supervisors, different capabilities, different work rule violations or different disciplinary records are not considered to be nearly identical."   *Id.* (cleaned up); *see also Okoye v. Univ. of Tex. Houston Sci. Ctr.*, 245 F.3d 507, 514-15 (5th Cir. 2001).   Here, the undisputed record clearly establishes that Mr. Shelton and Mr. Allen had different jobs, responsibilities, and supervisors, as summarized by this table:



And Mr. Allen presented **no** evidence regarding Mr. Allen's and Mr. Shelton's disciplinary record. Thus, the record makes clear that Mr. Allen's and Mr. Shelton's circumstances are far from "nearly identical." *See Crosby v. Computer Sci. Corp.*, 470 F. App'x 307, 309 (5th Cir. 2012) ("Here, the district court correctly determined that Condit is not a valid comparator because he was Crosby's supervisor (and therefore did not have the same supervisor as Crosby)[.]").

But there's more—the alleged violations are also different. Mr. Shelton supposedly, though never confirmed, had a gun in his car in the

parking lot of the South Austin Station.  ROA.246, 117:9-16.  That scenario is covered by a separate procedure in the Weapons Policy. ROA.192.  Where a firearm is "reported or observed in a vehicle on company property," FedEx instructs employees to "refer to the FedEx Security Weapons and Firearms Guidelines, which are located on the FedEx Global Security page (keyword – firearm) or contact PPS [Protection and Preventive Services] before taking any action." ROA.192. There's a good reason for this difference.  Some states, like Texas, have prohibited employers from banning the lawful possession of firearms in a locked, privately owned motor vehicle in an employer's parking lot. Tex. Lab. Code § 52.061.  That is why the District Court concluded that Mr. Allen "has not shown that [Mr.] Shelton even violated the Weapons Policy."  ROA.283 n.5.

To sum up this subsection in one sentence, Mr. Allen "has not shown that [he] was treated less favorably because [he] has failed to proffer any comparators for this claim." *Ross v. Judson Indep. Sch. Dist.*, 993 F.3d 315, 323 (5th Cir. 2021).

**III.   The District Court's judgment should also be affirmed because Mr. Allen offered no evidence showing that FedEx's legitimate, non-discriminatory reason for terminating Mr. Allen was pretextual.**

Even if Mr. Allen could clear his prima facie hurdle, which, again, he cannot, he would still lose.   Once a plaintiff establishes all the elements of his prima facie case, the burden just shifts to the employer to "articulate a legitimate, nondiscriminatory reason for the questioned employment action."   *Frank v. Xerox Corp.*, 347 F.3d 130, 137 (5th Cir. 2003).   FedEx has clearly articulated such a reason.

To briefly recap, Mr. Munoz showed Mr. Allen his gun inside FedEx's South Austin Station on May 16, 2021.  ROA.150-51, 73:1-74:10, ROA.200-02.  Mr. Allen knew this was a violation of FedEx's Weapons Policy.  ROA.200-02.  Mr. Allen was the only manager present.  ROA.151, 74:14-20.  Mr. Allen did not secure the weapon in a divesting tray, as required by the Weapons Policy.   ROA.151, 74:14-22.  Mr. Allen did not notify FedEx Security or Mr. Shelton, the Station Manager, of this dangerous development, as required by the Weapons Policy.  ROA.151, 75:21-76:1.  Three days later, Mr. Allen finally told an employee in a subordinate position to him about the incident.   ROA.151, 76:2-12, ROA.180, 45:8-9, ROA.200-02.  Mr. Allen was suspended on May 20,

2021, the same day FedEx Security learned of and began its investigation into the reported weapons violation. ROA.200-02. Following that investigation, and a finding that Mr. Allen violated the Weapons Policy, FedEx terminated Mr. Allen's employment on June 1, 2021. ROA.184, 61:13-22, ROA.159, 109:15-19. That decision was based solely on Mr. Allen's violation of the Weapons Policy; it had nothing to do with his age, which wasn't even a consideration. ROA.208, ¶¶ 2-3.

In short, FedEx terminated Mr. Allen's employment because one month after a mass shooting at a FedEx facility claimed the lives of eight innocent people, Mr. Allen admittedly failed to notify FedEx Security or the Station Manager that an employee showed him a gun inside the South Austin Station.

Since FedEx had a legitimate reason to terminate Mr. Allen, he, then, has the burden to show that this reason was pretextual, and that discrimination was a motivating factor in FedEx's decision to terminate him. A plaintiff may establish pretext in two ways. First, a plaintiff can show that the "employer's proffered explanation is false or unworthy of credence." *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 379 (5th Cir. 2010) (cleaned up). Second, a plaintiff can establish pretext

"through evidence of disparate treatment." *Id.* at 378-79. Mr. Allen has done neither.

He first tries to argue that the FedEx's reason was false because he "did not violate the weapon policy and the intent of the weapon policy did not even apply to [him]." Appellant's Br. 15. Mr. Allen made this exact claim below and the District Court correctly rejected it as nonsense. ROA.284 ("To the extent [Mr.] Allen attempts to argue he did not in fact violate the Weapons Policy, the court rejects that argument.").

The Weapons Policy clearly states Mr. Allen had to take certain prescribed "actions in the event that an employee with a firearm or weapon is discovered in a station/hub[.]" ROA.191. Here's a screenshot of the required actions:



**Firearms or Weapons Discovered in Station/Hub**

FedEx Ground station/hub management or contract security must take the following actions in the event that an employee with a firearm or weapon is discovered in a station/hub or company parking lot (unless otherwise permitted by state law). Refer to the FedEx Security Weapons and Firearms Guidelines, which are located on the FedEx Global Security page ((keyword - firearm).

1. Ask the individual to place the weapon into a divesting tray and remain in the screening area.
2. Contact law enforcement if the weapon is a firearm and the individual does not have a permit.
3. Communicate the security policy regarding firearms and weapons to the individual.
4. Write down the individual's name and FedEx ID number.
5. Take a picture of the weapon.
6. Secure the divesting tray and weapon in a safe and secure location.
7. Notify FedEx Express Security or FedEx Ground station/hub management if FedEx Express Security is not available.

Management must place the employee on paid suspension.

ROA.191. The plain language of the Weapons Policy speaks for itself,

and this Court should reject, just as the District Court did, Mr. Allen's efforts to mischaracterize and distort its meaning. *Cornett v. United Airlines Inc.*, No. 18-698, 2020 U.S. Dist. LEXIS 170386, at *8-9 (W.D. Tex. Sept. 17, 2020) (granting summary judgment where plaintiff offered "no evidence controverting [defendant's] evidence that she violated the company's policy and was subsequently terminated for those violations"); *Germany v. Austin Coca-Cola Bottling Co.*, No. 00-2675, 2002 U.S. Dist. LEXIS 6848, at *21-22 (N.D. Tex. Apr. 18, 2002) (granting summary judgment where the "evidence show[ed] that Defendant, in its judgment, had more than enough evidence to support its conclusion that Plaintiff had violated its weapons policy, thus warranting his termination").

To establish disparate treatment as an alternative method of showing pretext, Mr. Allen simply doubles down on the same flawed arguments discussed at length, above. Specifically, that the cat's paw influence of Ms. Spivey and Ms. Elorduy over Mr. Shelton calls into question the "veracity of [FedEx's] reason for termination" and that FedEx "did not follow its own policy when investigating [Mr.] Shelton for his alleged gun violation." Appellant's Br. 15. As FedEx has already made clear, these arguments get Mr. Allen nowhere.

36

Accordingly, this Court should affirm the District Court's judgment for the additional reason that Mr. Allen cannot prove pretext.

## CONCLUSION

All of Mr. Allen's attacks on the District Court's well-reasoned judgment ring hollow. He cannot show that he was replaced by someone younger. He cannot show that anyone with a discriminatory motive had any influence over the decision to terminate his employment. He cannot use Mr. Shelton as a viable comparator to prove disparate treatment. He cannot establish that FedEx's legitimate reason for terminating his employment was pretextual. For these reasons, FedEx respectfully requests that this Court affirm the District Court's judgment.

<div style="margin-left: 40%;">

Respectfully submitted,

*/s/ James P. Angelo*
Joseph W. Gagnon
Fisher & Phillips
910 Louisiana Street, Suite 4000
Houston, TX 77002
Phone: (713) 292-5613
jgagnon@fisherphillips.com

James P. Angelo
Federal Express Corporation
1000 FedEx Drive
Moon Township, PA 15108
Phone: (412) 859-2083
james.angelo@fedex.com

</div>

37

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the forgoing Appellee's Brief was filed using the Court's ECF-CM system on August 29, 2024, which will serve notice and a copy in electronic format to Mr. Lyle W. Cayce, Clerk of the United States Court of Appeal for the Fifth Circuit, as well as all counsel of record.

*/s/ James P. Angelo*
James P. Angelo

## CERTIFICATE OF COMPLIANCE

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 7,506 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Fifth Circuit Rule 32.2.  The undersigned relied on his word processor to obtain that count.

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface and double spaced using a currently updated and licensed copy of Microsoft Word in Century Schoolbook font 14-point type face, with footnotes single-spaced and in 12-point type face.

*/s/ James P. Angelo*
James P. Angelo